# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BOAT PEOPLE S.O.S., INC.,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| v. | : | |
| | : | No. 16-5486 |
| **URBAN AFFAIRS COALITION, et al.,** | : | |
| Defendants | : | |

**Goldberg, J.**                                                                                                                                                  **January 25, 2018**

## MEMORANDUM OPINION

This case involves a business dispute over the alleged transition of resources and employees from one corporation to another. Plaintiff Boat People SOS, Inc. ("BPSOS") has sued Defendant Urban Affairs Coalition ("UAC"), and multiple individual Defendants Nancy Nguyen, Catherine Nguyen, Mai Huynh, Lan Dinh, Duong Ly, Francis Fred Melroy, and David Forde, Jr. Plaintiff alleges causes of action for: Civil Conspiracy (Count I); Breach of the Duty of Loyalty (Count II); Tortious Interference with a Contract (Count III); Tortious Interference with Business Relationships (Count IV); Defamation (Count V), Conversion (Count VI), and Computer Trespass (Count VII). Presently before the Court are two Motions—one by Defendant UAC and one by Defendants N. Nguyen, C. Nguyen, Dinh, and Ly—to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.

For the reasons set forth below, Defendant UAC's Motion will be granted and Defendants N. Nguyen, C. Nguyn, Dinh, and Ly's Motion will be denied.

## I. BACKGROUND

BPSOS and UAC are nonprofit corporations with charitable missions. BPSOS initially employed the individual Defendants, some of whom UAC later employed as staff for VietLEAD,

an unincorporated organization operating as a sponsored program of UAC. The Amended Complaint asserts that UAC and VietLEAD's staff conspired between and among themselves, and with other named defendants and nonparties, to unlawfully take control of BPSOS's Delaware Valley offices and divert their operations, assets, revenue, grants, contracts, business relationships, good will, and client data to VietLEAD. (Am. Compl. ¶¶ 90, 95.)

### A. The Parties

Plaintiff BPSOS is a nonprofit corporation organized under the laws of Virginia, with a principal place of business in Falls Church, Virginia. BPSOS has branch offices in Pennsauken, New Jersey and Philadelphia, Pennsylvania (together, the "Delaware Valley offices"). BPSOS's stated mission is "to empower, organize and equip Vietnamese individuals and communities in their pursuit of liberty and dignity." BPSOS has operated a youth development project in the Delaware Valley also named, "VietLEAD." (Am. Compl. ¶¶ 1, 13(b), 14–16.)

Defendant UAC is a nonprofit corporation organized under the laws of Pennsylvania, with headquarters in Philadelphia, Pennsylvania. UAC's stated mission is "to build wealth in urban communities and develop youth and young adults." "UAC works with a network of partner organizations that offer an array of services . . . in the areas of youth development, adult education and job training, health related services, financial education, housing support, advocacy and economic inclusion." UAC's fiscal sponsorship provides a "full suite of 'back-office' support to its program partners," including "general management, financial, administrative and human resource support." (Def. UAC Br. at 2–5.)

### B. Procedural Background

On April 22, 2016, BPSOS commenced this action in the District Court for the Eastern District of Virginia against the same Defendants named here and against another Defendant

Public Health Management Corporation ("PHMC"). BPSOS voluntarily dismissed the complaint against PHMC without prejudice.

On October 18, 2016, the Virginia District Court granted separate motions to dismiss for lack of personal jurisdiction over UAC, N. Nguyen, C. Nguyen, Dinh, and Ly and improper venue, and transferred all claims against all Defendants to the Eastern District of Pennsylvania. Upon transfer, the parties were directed to refile any motions which were pending before the action was transferred. On January 20, 2017, Defendants filed the present Rule 12(b)(6) motions.

### C. Facts Alleged in the Amended Complaint[1]

From March 30, 2009 through June 30, 2015, Nancy Nguyen was BPSOS's Branch Manager and then Executive Director of the Delaware Valley offices. On March 6, 2015, N. Nguyen emailed UAC "to discuss moving BPSOS's Delaware Valley operations to UAC 'independent of our national office.'" The persons at UAC with whom N. Nguyen communicated are not identified. (Am. Compl. ¶¶ 17–18.)

On April 2, 2015, another BPSOS employee, Mai Huynh, "contacted the BPSOS Board of Directors to discuss the possibility of setting up a locally incorporated entity affiliated with BPSOS." Huynh allegedly did so "on behalf of" a collection of other persons referred to as "The Group." The Group comprises twelve persons: the named individual Defendants Nancy Nguyen, Catherine Nguyen, Mai Huynh, Lan Dinh, Duong Ly, Francis Fred Melroy, and David

---

[1] The facts recounted are those alleged in the Amended Complaint, which are accepted as true. Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd., 836 F.3d 261, 264, 268 (3d Cir. 2016) (citing Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). For purposes of Rule 12(b)(6), "a court 'must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" Id. at 268, 273 (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

3

Forde, Jr., [2] as well as other persons who are not named as defendant parties in this action. (Id. ¶¶ 20, 95.)

On April 10, 2015, some Group members met with BPSOS's Board of Directors. At the meeting, Group members proposed that the Delaware Valley offices be transferred to a separate organization that The Group planned to form. As justification for that proposal, Group members voiced concerns about the "indirect cost rate" that the Board was using as a goal to assess the Delaware Valley offices' actually incurred, average overhead costs. The Board proposed a multi-year transition of the Delaware Valley offices to a separate organization, and Group members proposed an immediate transition. Despite several more meetings, no agreement on a transition plan was reached, and on July 7, 2015, the Board terminated discussions with The Group. (Id. ¶¶ 21–22, 24–25, 27, 93.)

In early July, 2015, Group members began negotiating with UAC for a sponsorship contract. Under the contemplated contract, UAC was to "be the fiscal sponsor for the Delaware Valley offices of BPSOS." The Amended Complaint neither identifies the Group members or the UAC representatives who negotiated nor pleads any specific acts or statements by any individuals. (Id. ¶ 26.)

On July 7, 2015, Nancy Nguyen sent an email to unidentified Group members "asking if The Group's new organization could still engage directly with BPSOS funders to request that the funders move to the new organization." She also wrote in an email: "How do we move forward now? Do we go to funders and ask to move anyway? . . . What would national do?" That same day, other communications were exchanged between and among Group members regarding problems that might arise should they realize their plan to move the operations, assets, and

---

[2] Huynh, Melroy, and Forde apparently have not yet been served with process.

funding of the Delaware Valley offices to a newly formed organization, separate from BPSOS. (Id. ¶¶ 28–31.)

On or about July 7, 2015, a "plot was formulated" among members of "The Group," who are identified as N. Nguyen, C. Nguyen, Huynh, Dinh, Ly, Melroy, Forde, and nonparty Khai Dino Tran. The agreement is described as "a plot to take control of the BPSOS Delaware Valley offices and all assets, revenue, business relationships, goodwill, client data, existing grants and contracts and future grants and contracts away from BPSOS." The Amended Complaint alleges that "The Group had a plan to recruit community leaders to support VietLEAD"—the name chosen by The Group for their newly formed, unincorporated organization based in Philadelphia, Pennsylvania, separate from BPSOS. (Id. ¶¶ 90, 95.)

On August 10, 2015, UAC entered into a "Fiscal Sponsorship Agreement" with VietLEAD, effective September 1, 2015. (Agreement, Def. UAC Mot., Ex. C.) The Agreement was signed by the President and CEO of UAC, Nancy Nguyen as Executive Director of VietLEAD, and Mai Huynh as Chair of the Advisory Board of VietLEAD. The Agreement's stated purpose was "to establish Program Partner as a fiscally sponsored program of UAC and to set forth the terms and conditions that will govern the relationship." (Id. § II at 2.) Under the Agreement, VietLEAD was a "Program Partner" that was "under the legal control and authority of UAC as a fiscally sponsored Program Partner for the duration of this agreement." (Id., Preamble at 1, Recitals ¶ E at 1.) The Agreement further stated that VietLEAD's Executive Director and Advisory Board, (subject to the ultimate direction and fiduciary responsibility of UAC's Board of Directors), was responsible for VietLEAD's "day-to-day operations," and VietLEAD was "fully responsible for raising sufficient funds to cover operating expenses." (Id. § VII.A, C at 4.) In addition, under the Agreement, UAC was "the employer of record of all staff

5

members of Program Partner," VietLEAD, and "all personnel to be compensated for working as Program Partners['] staff, shall become at-will employees of UAC on the effective date," September 1, 2015. (Id. §§ I, VI.A, B at 2-3; Am. Compl. ¶ 32.)

On August 19, 2015, Catherine Nguyen and Mai Huynh met with UAC. The purpose of the meeting was "to discuss moving the BPSOS Delaware Valley offices to UAC." On August 25, 2015, Huynh "reported to The Group" that "after meeting with the executives from UAC, I am comfortable and confident with moving forward and continuing on with our agreed plan which is to move our back end office to UAC." The Amended Complaint does not identify the persons at UAC with whom C. Nguyen and Huynh met. It further alleges that UAC's "executives" suggested that VietLEAD start with UAC "officially on September 1, 2015 with the 100K grant." UAC's executives also "suggested that VietLEAD 'keep [the] two organizations in operation until BPSOS (Delaware Valley) spends down all funds from the grants that are due to end by the end of 2015.'" (Am. Compl. ¶¶ 33, 36–37, 40–41.)

On September 1, 2015, UAC became "the employer of record for staff members of VietLEAD," and "assumed 'legal control and authority' of the organization." Specifically, the Amended Complaint alleges that Nancy Nguyen, Mai Huynh, Lan Dinh, and Duong Ly became employees of UAC, and that they were "employees" and "agents" of UAC who acted "on behalf of UAC" in furtherance of the agreement to take control of and divert the operations, assets and funding of the Delaware Valley offices for UAC's and the conspirators' benefit. (Id. ¶¶ 32, 43–45, 101–102, 123–129, 131–137, 202–204.)

The Group also planned to recruit community leaders to support VietLEAD. In implementing that plan after September 1, 2015, Plaintiff alleges that certain Group members—largely, Nancy Nguyen—made false and defamatory statements as to the soundness of BPSOS's

6

operations and the quality of its programs. False and defamatory statements were also allegedly made about VietLEAD's affiliation with BPSOS and VietLEAD's authority to receive funds that were promised or payable to BPSOS. In many instances, the Amended Complaint broadly alleges that "The Group" made false and defamatory statements. (Id. ¶¶ 46, 59, 62, 77, 81–87, 90–92, 98–99, 103, 105, 156, 158, 163, 193, 199, 213–15, 221–22, 225–27. )

Finally, the Amended Complaint states that only BPSOS's Board of Directors had the authority to transfer the Delaware Valley offices to a separate organization and that the Board did not authorize transfer of those offices to VietLEAD. It further explains that only the Board had the authority to transfer funds from BPSOS to another entity. VietLEAD's staff and others convinced donor and funding entities to transfer to VietLEAD funds that were promised or payable to BPSOS. The Amended Complaint emphasizes that the Board never authorized those transfers. (Id. ¶¶ 34–35, 56–57, 67, 75.)

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal, 556 U.S. at 679).

For purposes of Rule 12(b)(6), "a court 'must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" Hartig Drug Co., Inc. v. Senju Pharm. Co. Ltd., 836 F.3d 268, 273 (3d Cir. 2016) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). Documents "integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." Angstadt v. Midd–West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004) (citation and internal quotation marks omitted). A district court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

### A. UAC's Motion to Dismiss the Civil Conspiracy Claim

Count I of the Amended Complaint alleges a civil conspiracy. Although the Amended Complaint brings this cause of action against all Defendants, only UAC moves to dismiss the civil conspiracy cause of action. Accordingly, I focus solely on whether the Amended Complaint plausibly pleads this cause of action against UAC.

Under Pennsylvania law,[3] a plaintiff pleading civil conspiracy "must allege (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." Kline v. Sec. Guards, Inc., 386 F.3d 246, 262 (3d Cir. 2004) (citation and internal quotation marks omitted); Skipworth v. Lead Indus. Ass'n, Inc., 690 A.2d 169, 174 (Pa. 1997). A conspiracy requires "a shared intent" to do an unlawful act—a meeting of the minds. In re Semcrude L.P., 864 F.3d 280, 297 (3d Cir. 2017); McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005) (requiring "that two or more people conspire to do an unlawful act"). In addition, "[a] claim for civil conspiracy 'cannot be pled without also alleging an underlying tort.'" Id. (quoting Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405-07 (3d Cir. 2000)); Rock v. Rangos, 61 A.3d 239, 249 (Pa. Super. Ct.), appeal denied, 80 A.3d 778 (Pa. 2013) (citing Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super. Ct. 2004) ("[A]bsent a civil cause of action for a particular act, there can be no

---

[3] Defendants maintain that Pennsylvania law applies. Plaintiff BPSOS disagrees, suggesting that Virginia law governs, but posits that the Amended Complaint adequately pleads claims under the laws of both Virginia and Pennsylvania. Importantly, BPSOS's response to the dismissal motions cites solely Pennsylvania law and identifies no conflict between the laws of Pennsylvania and Virginia that affects a decision here. As the parties have agreed on the applicable law in briefing the present dismissal motions, I will apply Pennsylvania law solely for the purpose of deciding these Motions.

cause of action for civil conspiracy to commit that act.")). Finally, "[p]roof of malice," that is "intent to injure, is essential in proof of a conspiracy." Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979).

Plaintiff's civil conspiracy cause of action alleges that N. Nguyen, C. Nguyen, Huynh, Dinh, Ly, Melroy, Forde, and Tran—collectively, "The Group"—"formulated a plot to take control of the BPSOS Delaware Valley offices and all assets, revenue, business relationships, good will, client data, existing grants and contracts and future grants and contracts away from BPSOS." (Am. Compl. ¶ 95.) Count I also asserts that before September 1, 2015, "The Group discussed these plans with UAC and UAC participated in devising the implementation of The Group's plans," and that "UAC advised The Group to spend down all funds from grants due to BPSOS by the end of 2015." (Id. ¶ 100.) Count I concludes that "as result of the actions of The Group and UAC, BPSOS has suffered harm." (Id. ¶ 110.) Otherwise, Count I does not mention UAC.

These allegations fail to state a plausible claim for civil conspiracy against UAC on two grounds.

First, Plaintiff does not set forth sufficient allegations to support an inference of an agreement between UAC and The Group to carry out the "plot" as described in the Amended Complaint. To allege a plausible claim of civil conspiracy, a plaintiff must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997) (citation and internal quotation marks omitted). "Simply alleging the existence of an agreement or conspiracy is not enough." Kist v. Fatula, No. 06-07, 2007 WL 2404721, at *9 (W.D. Pa. Aug. 17, 2007). Further, it is not

enough that the "end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." Id.

The Amended Complaint does not plead a direct agreement between UAC and any other alleged conspirator, but rather relies on only a suspicion of conspiracy. Nor does Plaintiff allege any specific statements, acts, or conduct by UAC showing that UAC agreed with one or more Group members or anyone else to control the Delaware Valley offices and divert their operations, assets, revenue, grants, contracts, business relationships, good will, and client data to VietLEAD. Although BPSOS cites allegations in the body of the pleading, contending that those allegations show that UAC participated in the purported plot, (see Pl. Br. at 4–8), the cited allegations describe conduct only by named Group members and "The Group" collectively. Nothing is said about UAC. Indeed, according to the Amended Complaint, the alleged "plot" to take control of the BPSOS Delaware Valley offices was formulated by Group members on July 7, 2015, and Defendant Mai Huynh and Catherine Nguyen did not meet with UAC regarding their plan to move BPSOS offices until August 19, 2015. (Am. Compl. ¶¶ 32, 90.) The mere fact that UAC "discussed these [unlawful] plans" with Group members and that UAC "participated" in "the implementation of The Group's plans" are conclusory allegations without any facts to support UAC's intent to join in the actual "plot." In short, the Amended Complaint sets forth insufficient facts to permit a plausible inference that UAC agreed or acted in combination with one or more Group members with a common purpose to do an unlawful act.

Second, even assuming that an inference of agreement could be drawn from the allegation of the Amended Complaint, the element of malice is lacking. As noted above, proof of malice remains essential in pleading a conspiracy. Thompson Coal, 412 A.2d at 472. The element of malice requires a showing that "the sole purpose of the conspiracy is to cause harm to

the party who has been injured." Becker v. Chicago Title Ins. Co., No. 03-2292, 2004 WL 228672, at *13 (E.D. Pa. Feb. 4, 2000). As malice can only be found when the *sole purpose* of the conspiracy is to injure the plaintiff, pleading that a person acted for professional reasons, and not solely to injure the plaintiff, negates a finding of malice. See Sarpolis v. Tereshko, 26 F. Supp. 3d 407, 423–24 (E.D. Pa. 2014) (declining to infer malice where a complaint averred that "all parties reaped financial or career benefits, at Plaintiff's expense," from the alleged conspiracy), aff'd, 625 F. App'x 594 (3d Cir. 2016).

The Amended Complaint consists of conclusory statements that do not plausibly allege that UAC acted in combination with one or more Group members with the *sole* purpose of committing an unlawful act and injuring Plaintiff. Rather, at best, the alleged meetings and discussions with Group members support nothing more than the mere *possibility* that UAC acted unlawfully, while simultaneously acting for the legitimate business purpose of providing fiscal sponsorship of a new partner organization that would offer youth development services.

In an effort to rebut this conclusion, Plaintiff provides block citations to numerous paragraphs of the Amended Complaint that purportedly allege improper purpose. Plaintiff's argument fails, however, in the fact that the allegations are equally consistent with legitimate professional and business purposes and, thus, do not allow an inference that the sole purpose of UAC's participation in the alleged conspiracy was to injure Plaintiff. For example, UAC's alleged activity in planning to form a separate, competing organization to serve the same Vietnamese community that was served by BPSOS is not, in and of itself, illegitimate. Nor was there anything illegal in discussing opportunities for VietLEAD to become a UAC Program Partner. Moreover, after VietLEAD became a Program Partner on September 1, 2015, UAC provided general management, financial, administrative, human resource, and "back-office"

support to VietLEAD, as UAC was contractually obligated to do under the Fiscal Sponsorship Agreement. Similarly, allegations that UAC advised Group members to "spend down all funds from grants due to BPSOS by the end of 2015" also do not support an inference of intent to harm Plaintiff. (Am. Compl. ¶ 100.) Indeed, as UAC explains, "it is merely advice that the Group should not take funds out of BPSOS . . . that had already been granted for 2015 projects." (Def. UAC Br. at 10.)

In short, the Amended Complaint fails to allege sufficient facts from which I can find either that UAC entered into an agreement with the Group for an unlawful purpose or that UAC acted with malice, *i.e.* with the sole purpose of harming Plaintiff. Accordingly, I will dismiss the civil conspiracy claim against UAC.

### B. UAC's Motion to Dismiss Common Law Tort Claims Underpinning the Pled Conspiracy

Counts III–VI of the Amended Complaint assert tort claims against UAC for interference with contract, interference with business relationships, defamation, and conversion respectively. UAC maintains that the pleading does not adequately allege facts to support one or more of the substantive elements of each tort.[4] BPSOS responds that facts satisfying all requisite elements of each tort have been pled.

---

[4] As to Counts III and IV, UAC contends that the pleading does not allege the existence of a contract, and does not allege that UAC intended to harm BPSOS, both of which are requisite elements of the causes of action for interference with contract and with business relationships. (Def. UAC Br. at 1, 11-13.) As to Count V, UAC contends that the pleading does not allege any specific statements made by UAC that were false and defamatory. (Id. at 1, 13–14.) UAC maintains that "BPSOS has not stated with any particularity the content o[f] the purported communications made by UAC, the identity of the persons making the statement, the relationship of the persons to UAC and authority to act on UAC's behalf." (Id. at 13.) And "BPSOS also fails to identify the person or persons to whom the purported statements were made and the relationship of that person to the companies allegedly receiving communications." (Id. at 14.) As to Count VI, UAC contends that the pleading does not allege that BPSOS had an enforceable right to any funds that were allegedly converted, and the "client data" that was allegedly converted is not a proper subject of a cause of action for conversion. (Id. at 1, 14–16.)

All of these Counts, as alleged against UAC, fail for the same reason. Each of Counts III–VI alleges that one or more Group members committed specific tortious acts, and made specific false and defamatory statements, all in furtherance of the pled conspiracy, and that VietLEAD's staff did so in the course and scope of their employment and agency for UAC. Notably, however, none of the Counts alleges any specific words or acts undertaken by UAC that are tortious. Instead, each Count predicates UAC's liability on two theories of recovery, neither of which is actionable on the facts pled.

First, Plaintiff asserts UAC is jointly liable as a co-conspirator for the tortious words and acts of certain Group members. But, as mentioned above, the Amended Complaint does not sufficiently allege that UAC is one of the conspirators. Absent a plausible conspiracy, UAC cannot be liable as a co-conpirator.

Second, Plaintiff asserts that UAC is liable as an employer and as a principal for the acts and statements of VietLEAD's staff. More specifically, the Amended Complaint asserts that in furtherance of the conspiracy, VietLEAD's staff committed the pled torts in the course and scope of their employment with UAC and as "agents" of UAC.[5]

To plausibly impute the words or acts of VietLEAD's staff to UAC, however, more than such conclusory statements is required. The "imputation doctrine recognizes that principals generally are responsible for the acts of agents committed within the scope of their authority." Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Found. v. PriceWaterhouseCoopers, LLP, 989 A.2d 313, 333 (Pa. 2010). The doctrine protects "those who transact business with a corporation through its agents believing the agent's conduct is with the authority of his principal." Id. Importantly, before the words or acts of one person can be

---

[5] (See, e.g., Am. Compl. ¶¶ 44–45, 102, 145, 153, 162, 163, 166, 170, 172, 176, 182, 184, 188, 190, 199, 221, 225, 236, 241, 247; see also Pl. Resp. at 4-6, 8.)

imputed to another, an agency relationship must exist between them. And the party asserting an agency relationship must plead and prove the "basic elements of an agency," which are:

> the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking[,] and the understanding of the parties that the principal is to be in control of the undertaking.

Morilus v. Countrywide Home Loans, Inc., 651 F. Supp. 2d 292, 299 (E.D. Pa. 2008) (quoting Scott v. Purcell, 415 A.2d 56, 60 (Pa. 1980) (quoting Restatement (Second) of Agency § 1 cmt. b (1958)) (alteration added).

Here, while the Amended Complaint baldly alleges that UAC is liable as an employer for the words and acts of VietLEAD's staff—a conclusory allegation that must be disregarded under Iqbal—it pleads no facts regarding the existence of an agency relationship between UAC and any other Defendant. The Amended Complaint alleges only that under the Fiscal Sponsorship Agreement, UAC became "the employer of record for staff members of VietLEAD," and "assumed 'legal control and authority' of the organization." (Am. Compl. ¶¶ 32, 43–45, 101.) Even taking as true that these individuals were employees of UAC, however, their employment status alone does not support a plausible inference that the goals of the conspiracy fell within their assigned or delegated duties.[6] Nor does their employment status allow a plausible inference that they were acting as agents for their principal, UAC, in pursuing the goals of the alleged conspiracy, or that these individuals accepted such an undertaking on behalf of UAC. It is

---

[6] Importantly, an "agent cannot, simply by his own words, invest himself with apparent authority. Such authority emanates from the actions of the principal and not the agent." D & G Equip. Co., Inc. v. First Nat'l Bank of Greencastle, Pa., 764 F.2d 950, 954 (3d Cir. 1985) (citation and internal quotation marks omitted); accord Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 221 (3d Cir. 2010). "Apparent authority is power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted." Revere Press, Inc. v. Blumberg, 246 A.2d 407, 410 (Pa. 1968). An adequately pled complaint "must make allegations beyond the actions of the agent." Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d 491, 503 (E.D. Pa. 2008) (citing D & G Equip., 764 F.2d at 954).

plausible that under the Fiscal Sponsorship Agreement, VietLEAD had actual authority to conduct day-to-day operations and VietLEAD was fully responsible for raising funds to cover operating expenses. But beyond VietLEAD's responsibilities as stated in the Agreement, the Amended Complaint is devoid of any allegations that UAC said anything to anyone or affirmatively did anything to lead others to believe that VietLEAD's staff were authorized to control and transfer any part of the Delaware Valley offices' operations, assets, revenue, grants, contracts, business relationships, good will, or client data to VietLEAD.

The Amended Complaint only concludes that UAC is liable as a conspirator, an employer, and a principal for the pled tortious words and acts. This pleading does not however contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" that UAC is liable for the misconduct alleged. Twombly, 550 U.S. at 556. Therefore, I will dismiss Counts III–VI of the Amended Complaint as against Defendant UAC.

### C. Individual Defendants' Motion to Dismiss Common Law Torts Underpinning the Pled Civil Conspiracy

Defendants Nancy Nguyen, Catherine Nguyen, Lan Dinh, and Duong Ly—all of whom were members of The Group—move to dismiss the claims for tortious interference with contract (Count III), tortious interference with business relationships (Count IV), and defamation (Count V) on three separate grounds.

First, Catherine Nguyen, Lan Dinh, and Duong Ly assert that Counts III and IV, which are directed against all Defendants, do not contain particularized allegations showing that any of them purposefully took action intending to interfere with contractual and/or business relationships. Instead, Counts III and IV largely allege knowledge, intent, statements, and conduct on the part of Nancy Nguyen and other conspirators. Moreover, as to Catherine Nguyen, Lan Dinh, and Duong Ly, their names do not appear in Count III, and Catherine

Nguyen's name does not appear in Count IV. Lan Dinh and Duong Ly are named in Count IV, but only as "double agents," meaning that they were employed for a period of time by both BPSOS and UAC. For these reasons, Catherine Nguyen, Dinh, and Ly request dismissal of Counts III and IV.

In light of the still-viable civil conspiracy claim against the Individual Defendants, however, this argument must fail. In the case of an actionable conspiracy, each conspirator is jointly liable for damages resulting from the wrongs committed by other conspirators in pursuance of their agreement. Beck v. Prupis, 529 U.S. 494, 503 (2000); Smith v. Berg, 247 F.3d 532, 539 (3d Cir. 2001); Commonwealth v. Murphy, 844 A.2d 1228, 1238 (Pa. 2004) (citing Commonwealth v. Wayne, 720 A.2d 456, 463-64 (Pa. 1998)); Commonwealth v. Golphin, 161 A.3d 1009, 1019 (Pa. Super. Ct. 2017). In order to hold each conspirator jointly liable, not every conspirator must commit an overt act in furtherance of the conspiracy, so long as one does. Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 415 (3d Cir. 2003) (citing Beck, 529 U.S. at 503); Murphy, 844 A.2d at 1238 (citing Wayne, 720 A.2d at 463-64). And "a plaintiff need not allege an underlying tortious claim against every co-conspirator." Tender Touch Rehab Servs., LLC v. Brighten at Bryn Mawr, 26 F. Supp. 3d 376, 405 (E.D. Pa. 2014).

Here, each of the Individual Defendants, as an alleged conspirator, is jointly liable for the damages resulting from the pled tort. In turn, the Amended Complaint need not name each Individual Defendant under each count of the Complaint, or state with particularly an underlying tort claim against each of them. For purposes of the Motion to Dismiss, it is sufficient that Plaintiff has pled this claim against some members of the conspiracy.

17

Second, Defendant Nancy Nguyen asserts that Count IV does not allege that she lacked privilege or justification for her alleged interference, a requisite element of the tort of interference with business relationships. See Acumed LLC v. Advanced Surgical Servs., 561 F.3d 199, 212 (3d Cir. 2009) (holding that "the absence of privilege or justification on the part of the defendant" is a requisite element of the tort of tortious interference with business relationships). In response, BPSOS correctly maintains that movants read Counts III–V too narrowly, in isolation from the remainder of the Amended Complaint.

An examination of the entirety of the Amended Complaint discloses that BPSOS has adequately pled that Nancy Nguyen lacked privilege, justification, or authority for her alleged interference. (See Am. Compl. ¶ 34 ("BPSOS did not give anyone approval to use the VietLEAD name for any purpose not affiliated with BPSOS"); ¶ 56 ("PHMC did not contact BPSOS to terminate the contract award to BPSOS."); ¶ 57 ("On December 29, 2015, Nancy Nguyen requested a new contract between PHMC and VietLEAD and also requested, falsely claiming to act on behalf of BPSOS, a copy of PHMC's termination letter of the contract with BPSOS."); ¶ 67 ("Upon information and belief, UW believed BPSOS transferred its operations to UAC due to the false representations of one or more members of The Group."); ¶ 76 ("Nancy Nguyen falsely represented to State Voices that BPSOS had given VietLEAD permission to share the data.") Accordingly, I find no merit to Defendants' argument.

Finally, the Individual Defendants request dismissal of Count V for defamation—directed against UAC, Nancy Nguyen, and "The Group"— asserting that the Amended Complaint only pleads that "The Group" has made false and defamatory statements. They contend that the Amended Complaint impermissibly alleges that "The Group" of conspirators "spoke as one,"

18

without identifying which individuals allegedly made what statements, to whom, and the circumstances surrounding the statements.

Again, this argument disregards the continued viability of the alleged civil conspiracy. "Civil conspiracy, though typically not an independent cause of action, is a 'mechanism for subjecting co-conspirators to liability when one of their member[s] committed a tortious act'; therefore, a plaintiff need not allege an underlying tortious claim against every co-conspirator." Tender Touch Rehab Servs., LLC v. Brigthen at Bryn Mawr, 26 F. Supp. 3d 376, 405 (E.D. Pa. 2014) (quoting Smith v. Berg, 247 F.3d 532, 539 (3d Cir. 2001)) (further quotations omitted). Here, the Amended Complaint specifically identifies allegedly defamatory statements made by "The Group" and contends that the statements were made in furtherance of the conspiracy. "The Group," as used in Count V, is the collective name defined elsewhere in the pleading to include movants and other conspirators. (Am. Compl. ¶¶ 20, 95.) At this juncture of the litigation, Plaintiff need not identify which member of The Group made these statements in order to hold all of the alleged conspirators liable for defamation.

## IV. **CONCLUSION**

For the reasons discussed above, the Rule 12(b)(6) motion to dismiss filed by UAC will be granted, and the Amended Complaint as against UAC will be dismissed without prejudice to filing a motion for leave to file a Second Amended Complaint. The Rule 12(b)(6) motion filed by Nancy Nguyen, Catherine Nguyen, Lan Dinh, and Duong Ly to dismiss Counts III–V of the Amended Complaint will be denied.

An appropriate Order follows.